# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
### INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| DANEAL QUALLS-HOLSTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:19-cv-04068-TWP-MG |
| | ) | |
| INDIANA UNIVERSITY, and | ) | |
| DEBORAH STOMBAUGH, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on a Motion for Summary Judgment filed pursuant to Federal Rule of Civil Procedure 56 by Defendants Indiana University[1] ("IU") and Deborah Stombaugh ("Stombaugh") (collectively, "Defendants") (Filing No. 46). After her decades of employment with IU involuntarily ended, Plaintiff Daneal Qualls-Holston ("Qualls-Holston") initiated this litigation bringing various employment claims against the Defendants pursuant to Title VII of the Civil Rights Act ("Title VII"), the Age Discrimination in Employment Act ("ADEA"), and the Family and Medical Leave Act ("FMLA") (Filing No. 1). The Defendants seek summary judgment on all of her claims. For the following reasons, the Court **grants** the Defendants' Motion.

## I.      BACKGROUND

The following facts are not necessarily objectively true, but as required by Federal Rule of Civil Procedure 56, the facts are presented in the light most favorable to Qualls-Holston as the

---

[1] Plaintiff Daneal Qualls-Holston incorrectly named "Indiana University" as a defendant in this case. The "Trustees of Indiana University" is the proper name of the defendant.

non-moving party. *See Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Qualls-Holston is a Black female who was hired by IU in 1983 as a clinical research technician in the Universities' Department of Medical and Molecular Genetics. In 1992, she became the Division Administrator of the Pulmonary, Critical Care, Sleep, Allergy, and Occupational Medicine Division (the "Division")[2] within the Department of Medicine (the "Department"). Her salary at the time of her termination in 2019 was $100,068.96 or $8,339.08 per month (Filing No. 49-3 at 3–4; Filing No. 49-6 at 12).

As Division Administrator, Qualls-Holston was responsible for the financial account management of the Division, faculty compensation, payroll management, developing and implementing a business plan for the Division, conducting market analysis, recommending business strategies, developing implementation procedures, analyzing industry trends, and managing financial activities relating to grants and laboratory ventures, among other duties and responsibilities. She was the only Black division administrator out of nine administrators in the Department (Filing No. 49-3 at 4; Filing No. 49-7; Filing No. 49-5 at 10, 124–25).

Defendant Stombaugh was hired by IU in December 1998. Prior to 2010, she served in various capacities at IU including the Division Administrator for the Rheumatology Division, Director of Life Sciences at the School of Medicine, and Associate Chief Operating Officer at the School of Medicine. In 2010, Stombaugh was promoted to be the Vice Chair for Clinical and Academic Administration, which is the position she held until her retirement (Filing No. 49-5 at 6, 11–13).

---

[2] A division is an academic unit in the School of Medicine based on a medical specialty (Filing No. 49-5 at 11).

From 2002 to 2017, Dr. Homer Twigg ("Dr. Twigg") was the Division Chief.  Dr. Roberto Machado ("Dr. Machado") became the Division Chief on September 1, 2017.  In her role as the Division Administrator, Qualls-Holston did not directly report to the Division Chief.  Instead, she reported directly to Stombaugh.  Even though Stombaugh worked with the Division Chief, she reported directly to Mark Geraci, the Department Chair of the School of Medicine (Filing No. 49-5 at 7, 21, 125–26; Filing No. 49-9 at 3, 14–15, 30; Filing No. 49-8 at 9–10, 14).

In 2011, Stombaugh spoke with Qualls-Holston about concerns raised by school leadership regarding the administration of the Center for Immuno-Biology ("CIMB").  Although CIMB staff did not report to Qualls-Holston, she tried to assign work to them and require that she approve all laboratory purchases, which was not within her role.  This resulted in a review of her duties and a discussion with the Division Chief, Dr. Twigg, and Qualls-Holston regarding the concerns and Qualls-Holston being reminded that CIMB staff do not report to her. Qualls-Holston has no recollection of this incident or discussion (Filing No. 49-10 at 2; Filing No. 49-11; Filing No. 49-12 at 4; Filing No. 49-3 at 5).

In 2013, Qualls-Holston improperly handled the salary package for a physician, and Stombaugh sent her an email expressing concern with how Qualls-Holston handled the matter.  Dr. Twigg also expressed the same concern.  Qualls-Holston believed that she did nothing wrong, and she did not believe that Stombaugh had any concerns with the situation. Yet, in January 2013, Stombaugh met with Qualls-Holston to discuss this issue and another issue of providing incorrect financial analysis resulting in an inaccurate forecast. Stombaugh placed Qualls-Holston on a Performance Improvement Plan ("PIP") from January 2013 through March 2013.  Qualls-Holston could not recall receiving the PIP or discussing it with Stombaugh, and she asserts that she did not

receive it (Filing No. 49-10 at 2; Filing No. 49-12 at 4–5; Filing No. 49-13 at 2; Filing No. 49-3 at 7–8; Filing No. 49-14 at 1–2; Filing No. 49-5 at 85, 120; Filing No. 49-3 at 9–10).

Later in 2013, Stombaugh prepared a document entitled "Daneal Qualls-Holston Performance Concerns June 18, 2013," which Stombaugh referred to as a second PIP in her timeline of performance issues. The document included supervisory concerns and financial concerns.  In June 2013, Qualls-Holston received a copy of this document from Stombaugh and discussed with her the enumerated concerns listed on the document.  However, Qualls-Holston did not agree with the concerns and believed they should not have been called performance concerns (Filing No. 49-17; Filing No. 49-10 at 2–3; Filing No. 49-5 at 122; Filing No. 49-3 at 10–13).

In 2014, Qualls-Holston submitted the Fiscal Year 2015 budget, and it was filled with errors, which would have led to significant overdraft of expenses that would not have been covered. Stombaugh prepared a new "Performance Concerns," document detailing concerns from February 2013 through March 2014 and discussed the concerns with Qualls-Holston on March 25, 2014. Qualls-Holston again did not agree with the concerns, believing that they were only Stombaugh's concerns about her (Filing No. 49-10 at 3; Filing No. 49-5 at 88; Filing No. 49-18; Filing No. 49-3 at 13, 15–16).

In July 2014, Qualls-Holston's service line administrator position was removed, to take effect on January 1, 2015.  This action reduced her duties as a clinical administrator and academic administrator to solely an academic administrator. Her clinical duties were removed because of performance and communication concerns.  Qualls-Holston did not think this was a demotion, yet she threatened to sue IU for discrimination if her job was reclassified (Filing No. 49-10 at 3; Filing No. 49-3 at 24; Filing No. 49-5 at 88–90; Filing No. 49-12 at 5).

Stombaugh provided Qualls-Holston with her 2014 performance evaluation, which included feedback from twelve faculty and staff members and included ratings of "Does Not Meet Expectations" on four of eleven competencies. The performance evaluation included negative feedback regarding Qualls-Holston's rudeness, lack of straight answers, slowness to respond, lack of trust, and difficulty understanding complex issues. Stombaugh discussed the issues presented in the performance evaluation with Qualls-Holston (Filing No. 49-19; Filing No. 49-3 at 19, 24–25).

In January 2015, Stombaugh issued another PIP to Qualls-Holston because of communication and staff management issues.  The PIP covered the time period of February 2015 through June 2015.  The communication concerns raised in the PIP included that Qualls-Holston caused confusion, was rude and disrespectful, and engaged in too long, scattered, and confusing verbal and written communications.  The staff management issues noted in the PIP included Qualls-Holston not providing enough background on requests so that administrative assistants could understand, giving menial tasks, not giving meaningful work, taking credit for others' work, and talking poorly about staff in front of other staff.  Qualls-Holston asserts that she never received the PIP or discussed it with Stombaugh (Filing No. 49-12 at 5; Filing No. 49-22; Filing No. 49-3 at 27).

In early 2016, Qualls-Holston improperly handled the salary and tenure appointment for a physician, and Stombaugh sent an email to Qualls-Holston expressing concern with how Qualls-Holston handled the matter.  Stombaugh explained that this was an example of the communication issues that she had discussed with Qualls-Holston in the past, and it made IU leadership look ineffective and uncoordinated (Filing No. 49-23 at 1).  Still, Stombaugh later indicated that Qualls-Holston had improved overall in 2016, and she was happy with her progress.  Stombaugh's 2016

performance evaluation of Qualls-Holston showed her as an "Effective Contributor" in each of the competencies.  Less than half the faculty and staff members who were asked to provide feedback gave any response for Qualls-Holston's performance evaluation.  Of those who provided feedback, some of them had concerns with her communication and fiscal accuracy.  Stombaugh later learned that faculty and staff declined to provide feedback for Qualls-Holston's performance review because they were intimidated and feared retribution from Qualls-Holston (Filing No. 49-5 at 39, 51; Filing No. 49-25 at 1; Filing No. 49-24; Filing No. 49-26 at 2).

On June 27, 2018, Stombaugh prepared a timeline of Qualls-Holston's performance issues dating back to March 2011, which summarized eighteen separate performance issues (Filing No. 49-10).  In August 2018, Stombaugh completed Qualls-Holston's 2017 performance evaluation.  It included the rating of "Does not meet expectations" on seven of ten competencies as well as for her overall assessment. There were significant complaints from staff regarding Qualls-Holston's disrespect, condescension, threatening statements, and obstruction.  Other concerns included weak communication skills, misrepresentation of policy, struggling to understand operational issues, significant turnover in staff, and lack of insight in personnel management.  Some staff previously had not provided honest input because of fear of retaliation by Qualls-Holston (Filing No. 49-27).

On August 21, 2018, Stombaugh and Dr. Machado met with Qualls-Holston to discuss her 2017 performance evaluation. Stombaugh prepared a summary of the meeting the next day, in which she recorded that Qualls-Holston acknowledged that she was aware of faculty dissatisfaction with her performance. On September 12, 2018, Qualls-Holston responded with a rebuttal to her evaluation, in which she attributed the negative reviews to false accusations and lies, and she also explained to Stombaugh that she felt she was subjected to discrimination and retaliation. That same day, Stombaugh and Ray Kliewer ("Kliewer"), Senior Director of Human

Resources, attempted to schedule a follow-up meeting with Qualls-Holston, but she responded that she would need to get back with Stombaugh's secretary (Filing No. 49-4 at 17; Filing No. 49-34; Filing No. 49-35; Filing No. 49-36; Filing No. 49-37).

On September 6, 2018, Qualls-Holston's attorney sent a letter to the dean of IU's School of Medicine, stating that Qualls-Holston was being subjected to race, age, and gender discrimination (Filing No. 49-56).  Then on September 18, 2018, Qualls-Holston filed a grievance with IU's Office of Equal Opportunity ("OEO"), alleging discrimination, retaliation, and a hostile work environment because she felt she was given an unfair evaluation.  Kliewer conducted a review of the 2017 performance evaluation and Qualls-Holston's rebuttal to the evaluation.  On October 29, 2018, Kliewer informed Qualls-Holston, Stombaugh, and Dr. Machado that the 2017 performance evaluation was accurate and supported by source materials.  On November 6, 2018, Stombaugh emailed Qualls-Holston requesting a meeting. Two days later, Qualls-Holston responded and declined a meeting, citing her open grievance filed with the OEO (Filing No. 49-38; Filing No. 49-40; Filing No. 49-41).

On November 20, 2018, Qualls-Holston met with Kliewer, Stombaugh, and Dr. Machado to discuss her performance.  Stombaugh provided Qualls-Holston with a "performance gap memo" that detailed four new issues since her August 21, 2018 performance evaluation.  The gap memo reported Dr. Machado's observation that he had seen no progress toward the concerns raised in the performance evaluation.  Stombaugh and Qualls-Holston met again on November 26, 2018, which Qualls-Holston described as a good meeting filled with productive discussion. Stombaugh informed Qualls-Holston that she could write a rebuttal to the issues raised in the performance gap memo.  On December 3, 2018, Qualls-Holston emailed her response to Stombaugh, Kliewer, and Dr. Machado, in which she disagreed with the assessment of her performance, stating that it was

based on inaccurate and incomplete information. She also asserted that she was being subjected to bias, retaliation, discrimination, and a hostile work environment (Filing No. 49-4 at 28, 30; Filing No. 49-42; Filing No. 49-43; Filing No. 49-44).

On February 13, 2019, Stombaugh and Dr. Machado met with Qualls-Holston for a monthly meeting and also to discuss the performance gap memo issues. At the meeting, Stombaugh provided Qualls-Holston with a second performance gap memo dated February 9, 2019, detailing a continued lack of improvement. Afterward, Stombaugh prepared a summary of the meeting, noting Qualls-Holston's lack of improvement and her lack of understanding the need to improve.  Stombaugh concluded that Qualls-Holston would likely never be able to perform at a minimal level of performance for the senior position of Division Administrator (Filing No. 49-4 at 31; Filing No. 49-45; Filing No. 49-46; Filing No. 49-47).

It became clear to Stombaugh and Dr. Machado that Qualls-Holston's performance would not improve, and she had no intention of improving her work performance, so Stombaugh and Dr. Machado together made the decision to terminate Qualls-Holston's employment on February 25, 2019. Qualls-Holston was informed of her termination that day. That same day, Stombaugh emailed her colleagues on behalf of Dr. Machado, informing them that there was a change in the division leadership and thanked Qualls-Holston for her thirty-five years of service to IU.  Kliewer designated Qualls-Holston as ineligible for rehire at IU.  Her position was filled by Heather Hennen, a Caucasian female (Filing No. 49-4 at 32; Filing No. 49-5 at 10, 18–19; Filing No. 49-8 at 11–12; Filing No. 49-48; Filing No. 49-49; Filing No. 49-50 at 7–8).

On April 23, 2019, Qualls-Holston filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging discrimination based on race and age and retaliation.  On July 2, 2019, the EEOC issued a Dismissal and Notice of Rights letter to

Qualls-Holston (Filing No. 49-57; Filing No. 49-58).  Qualls-Holston filed the instant lawsuit on September 27, 2019, asserting claims against IU for race discrimination in violation of Title VII, age discrimination in violation of ADEA, and retaliation for complaining about race and age discrimination as well as a claim against Stombaugh and IU for retaliation for taking FMLA leave (Filing No. 1). After Defendants filed their Motion for Summary Judgment on the four claims, (Filing No. 46), the parties filed a Joint Stipulation of Dismissal, dismissing Qualls-Holston's ADEA and FMLA claims, leaving only the race discrimination and retaliation claims against IU (Filing No. 62; Filing No. 63).

## II.      SUMMARY JUDGMENT STANDARD

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 489–90 (7th Cir. 2007).  In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante*, 555 F.3d at 584 (citation omitted). "However, inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." *Dorsey v. Morgan Stanley*, 507 F.3d 624, 627 (7th Cir. 2007) (citation and quotation marks omitted). Additionally, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*,

476 F.3d at 490 (citation omitted). "The opposing party cannot meet this burden with conclusory statements or speculation but only with appropriate citations to relevant admissible evidence." *Sink v. Knox County Hosp.*, 900 F. Supp. 1065, 1072 (S.D. Ind. 1995) (citations omitted).

"In much the same way that a court is not required to scour the record in search of evidence to defeat a motion for summary judgment, nor is it permitted to conduct a paper trial on the merits of [the] claim." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citations and quotation marks omitted). "[N]either the mere existence of some alleged factual dispute between the parties nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Grp., Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations and quotation marks omitted).

The Court views the designated evidence in the light most favorable to Qualls-Holston as the non-moving party and draws all reasonable inferences in her favor. *Bright v. CCA*, 2013 U.S. Dist. LEXIS 162264, at *8 (S.D. Ind. Nov. 14, 2013). "However, employment discrimination cases are extremely fact-intensive, and neither appellate courts nor district courts are obliged in our adversary system to scour the record looking for factual disputes." *Id.* at *8–9 (citation and quotation marks omitted).

## III.      DISCUSSION

Following the parties' Joint Stipulation of Dismissal, the claims remaining are Qualls-Holston's race discrimination and retaliation claims against IU. The Defendants argue that summary judgment is appropriate on these two claims because the designated evidence shows Qualls-Holston was terminated because of her long history of work performance issues, and there is no evidence of race discrimination or retaliation.

A.    **Preliminary Matters**

The Defendants first argue,

A claimant must file a charge with the EEOC within 180 days of an allegedly discriminatory act, 42 U.S.C. § 2000e-5(e). This deadline "protect[s] employers from the burden of defending claims arising from employment decisions that are long past. *Black v. Rieth-Riley Constr. Co., Inc.* 957 F. Supp. 177, 180 (S.D. Ind. 1997). Qualls-Holston's EEOC charge was filed on April 23, 2019. [DE 49-57.] Thus, all incidents or allegations prior to October 25, 2018 are time barred.

(Filing No. 51 at 22.)

Qualls-Holston did not respond to this initial argument presented by the Defendants. "The Seventh Circuit has clearly held that a party who fails to respond to points made . . . concedes those points." *Myers v. Thoman*, 2010 WL 3944654, at *4, 2010 U.S. Dist. LEXIS 107502, at *11 (S.D. Ind. Oct. 6, 2010). *See also Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver," and "silence leaves us to conclude" a concession.); *Cintora v. Downey*, 2010 WL 786014, at *4, 2010 U.S. Dist. LEXIS 19763, at *12 (C.D. Ill. Mar. 4, 2010) ("The general rule in the Seventh Circuit is that a party's failure to respond to an opposing party's argument implies concession."); *Sequel Capital, LLC v. Pearson*, 2010 U.S. Dist. LEXIS 109087, at *22 (N.D. Ill. Oct. 12, 2010) (same); *Thomas v. Am. Family Mut. Ins. Co.*, 2008 WL 4911192, at *5, 2008 U.S. Dist. LEXIS 92440, at *13–14 (N.D. Ind. Nov. 13, 2008) (same). Qualls-Holston's failure to respond results in a concession that all incidents or allegations prior to October 25, 2018, are time barred because claimants must file their charge with the EEOC within 180 days of an allegedly discriminatory act, and Qualls-Holston filed her EEOC charge on April 23, 2019.[3]

---

[3] The Court notes that "[b]y the statute's own terms, the 180-day period applies except if the plaintiff initially instituted proceedings with a State or local agency. 42 U.S.C. § 2000e-5(e)(1)." *Turner v. The Saloon, Ltd.*, 595 F.3d 679, 684 (7th Cir. 2010). Qualls-Holston initially filed her charge of discrimination with the EEOC, so the 180-day period applies. *See* Filing No. 49-57.

The Court additionally points out,

> [T]he statute of limitations applies differently depending on whether the plaintiff is asserting a claim for a discrete act of employment discrimination or for a hostile work environment. For the former category of claim, "the statute [of limitations] precludes recovery for discrete acts . . . that occur outside the statutory time period." [*Morgan*,] 536 U.S. at 105, 122 S. Ct. 2061. For the latter category, however, "consideration of the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period, is permissible for the purposes of assessing liability, so long as an act contributing to that hostile environment takes place within the statutory time period." *Id.* Thus, under *Morgan*, an employee claiming a hostile work environment "may file the charge (under Title VII) . . . within the statutory time from the last hostile act." *Pruitt v. City of Chicago*, 472 F.3d 925, 927 (7th Cir. 2006).

*Turner v. The Saloon, Ltd.*, 595 F.3d 679, 684 (7th Cir. 2010). Thus, the Court must determine whether Qualls-Holston's claim is one for discrete acts of race discrimination or one for a hostile work environment.

On September 27, 2019, Qualls-Holston filed her Complaint, which includes "Count I—Title VII; Racial Discrimination."  (Filing No. 1 at 4.)  Qualls-Holston alleges one discrete act of racial discrimination when Stombaugh singled her out at a company retreat. Count I alleges generic, non-specific racial discrimination by Stombaugh that IU failed to prevent.  The Complaint then alleges that IU's "discriminatory conduct was sufficiently severe and pervasive so as to unreasonably interfere with Plaintiff's mental and physical health, work performance and so as to create an intimidating work environment." *Id.* Count I is then concluded with the allegation that IU fired Qualls-Holston because of her race on February 25, 2019. *Id.* at 5.

Qualls-Holston's EEOC charge of discrimination suggests discrete acts of alleged discrimination and retaliation rather than a hostile work environment claim (*see* Filing No. 49-57). Importantly, Qualls-Holston's Statement of Claims—filed before the Defendants' Motion for Summary Judgment was filed—asserts that her race discrimination claim is based upon her termination while she observed less qualified, white employees receiving promotions and raises

(Filing No. 31 at 2).  In her Statement of Claims, Qualls-Holston makes no mention of a "hostile work environment" or an "intimidating work environment," and she says nothing about a work environment with harassment that was "so severe or pervasive as to alter the conditions of employment."[4]

The Defendants devote a section of their summary judgment brief to discussing a potential hostile work environment claim, and they argue—with support from legal authority—that the evidence does not support such a claim (*see* Filing No. 51 at 22–25). Qualls-Holston's summary judgment response brief says nothing about a hostile work environment claim.  It says nothing about severe or pervasive harassment, and it does not discuss a subjectively and objectively hostile environment.  Her response brief does not respond to the Defendants' argument about a potential claim for a hostile work environment.  Where a party makes no attempt to respond to an argument concerning a claim at summary judgment, that party waives the claim.  *See Abrego v. Wilkie*, 907 F.3d 1004, 1012 (7th Cir. 2018) ("Because [plaintiff] made no attempt to respond to [defendant's] exhaustion arguments at summary judgment, the district court correctly concluded that [plaintiff] waived any discrimination claims reliant on the 2014 EEO complaint.").

The Court concludes that, based upon Qualls-Holston's lack of summary judgment response, her Statement of Claims, and her EEOC charge of discrimination, Qualls-Holston's claim is one for discrete acts of race discrimination, not a hostile work environment.  Therefore, based upon 42 U.S.C. § 2000e-5(e), the Court will consider the incidents or allegations of discrimination as of October 25, 2018, because Qualls-Holston filed her EEOC charge on April 23, 2019. The Court cannot consider any allegations preceding October 25, 2018.

---

[4] One of the necessary, basic elements of a hostile work environment claim is that the alleged harassment must be "so severe or pervasive as to alter the conditions of employment and create a hostile or abusive working environment." *Demkovich v. St. Andrew the Apostle Par., Calumet City*, 3 F.4th 968, 977 (7th Cir. 2021).

B.   **Discrimination Claim**

In her Complaint, Qualls-Holston alleges, "On February 25, 2019, Defendant, IU fired Plaintiff in part due to her race in violation of Title VII of the Civil Rights Act of 1964, 42 USC 2000e." (Filing No. 1 at 5.)  In her summary judgment response, Qualls-Holston argues that "in the present case, the evidence would permit a reasonable fact finder to conclude that the plaintiff's race caused the termination."  (Filing No. 59 at 5.)

The issue in a discrimination case is whether the evidence would permit a reasonable fact finder to conclude that the plaintiff's race, sex, or other protected class caused the termination or other adverse employment action. *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016). The evidence must be considered as a whole instead of asking whether any piece of evidence proves the claim by itself. *Id.*

A plaintiff supports a discrimination claim by presenting evidence that shows: (1) she belongs to a protected class, (2) she met the employer's legitimate performance expectations, (3) she suffered an adverse employment action, and (4) similarly situated employees outside her protected class received more favorable treatment. *Simpson v. Franciscan All., Inc.*, 827 F.3d 656, 661 (7th Cir. 2016) (citing the *McDonnell Douglas* framework). "Only when the plaintiff has established this prima facie case does the burden shift to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action, at which point the burden shifts back to the plaintiff to submit evidence that the employer's explanation is pretextual." *Id.* (internal citation and quotation marks omitted).

In this case, there is no dispute that Qualls-Holston belongs to a protected class and suffered an adverse employment action. The Defendants argue that Qualls-Holston did not meet IU's legitimate performance expectations, and there are no similarly situated employees outside her

protected class who received more favorable treatment. The Defendants assert that Qualls-Holston was terminated because of her long history of work performance issues. In responding to the Defendants' summary judgment argument, Qualls-Holston fails to present any argument or admissible evidence concerning similarly situated employees outside her protected class who received more favorable treatment. While she makes conclusory, general statements that Caucasian employees received raises and better performance reviews, she makes no effort to present any argument or evidence or identification of any specific comparator employees to allow the Court to assess similarly situated employees outside her protected class. Therefore, rather than considering Qualls-Holston's discrimination claim under the *McDonnell Douglas* framework, the Court will consider the claim under the holistic approach of *Ortiz*.

Qualls-Holston argues that the School of Medicine "reflects a lily-white workplace where Plaintiff's complaints of race discrimination were ignored and then retaliated against." (Filing No. 59 at 2.) She points out that she "was the only Black Division Administrator out of nine in that position" and "during her tenure, Deb Stombaugh had two Black employees out of the twenty who reported to her". *Id.* In addition,"[t]here were no Black faculty in the IU School of Medicine Pulmonary Division". *Id.*

In support of her discrimination claim, Qualls-Holston points to a work meeting in September 2015, where Stombaugh held an activity titled "Privilege, Discrimination, and Oppression Statements," which asked questions about life experiences and background (Filing No. 49-61). It was meant to be an inclusivity and understanding activity (Filing No. 49-5 at 24–30). However, the activity led to Qualls-Holston often standing alone and feeling fearful, uncomfortable, and singled out because of her race (Filing No. 59-1 at 20–21). Another participant

responded to the activity: "Although somewhat painful for some of us, I think it was awesome that you shared it with the group."  (Filing No. 49-5 at 29.)

Qualls-Holston also points to an exit interview questionnaire for Bev Radloff ("Radloff"), a School of Medicine Human Resources specialist.  Stombaugh conducted an exit interview with Radloff on February 21, 2018. Radloff explained that she had planned to retire a year later, but she was not comfortable around Qualls-Holston who had "made her life miserable." (Filing No. 49-26 at 1.) She further explained that she wished the Division would have provided better protection from Qualls-Holston, and then it was noted, "lots of good here – just one black spot." *Id.*

In addition, Qualls-Holston points out that she was the only Black division administrator in her Department and the only division administrator to not receive a raise.  She argues that her younger, Caucasian peers received raises and did not receive the same criticism that was lodged against her (Filing No. 59-1 at 12). She further argues that the Defendants were racially discriminatory in their performance evaluations of her, and she was replaced by a Caucasian individual with less academic experience.

The Defendants argue that the September 2015 inclusivity activity cannot reasonably be viewed as evidence of racial discrimination as Qualls-Holston suggests. They assert that a workplace exercise meant to address privileges, discrimination, and oppression and to help individuals understand others' experiences cannot be seen as racially discriminatory.  Concerning the "just one black spot" statement on Radloff's exit interview questionnaire, the Defendants argue that Qualls-Holston simply speculates that the statement was referring to her race. Defendants contend that in reality, Stombaugh was not referring to Qualls-Holston's race, and it is not an objectively discriminatory statement (Filing No. 49-5 at 132).

The Defendants argue that Qualls-Holston's failure to receive a salary increase in 2017 had nothing to do with her race. Stombaugh contends that she performed a market analysis because the Department was losing staff and division administrators who were being offered higher salaries in other departments. The purpose of the salary increase was to increase the pay of division administrators who were underpaid according to the market for such positions. The analysis determined that the maximum benchmark pay a division academic administrator received in 2017 was $82,000.00. However, in 2017, Qualls-Holston's salary was approximately $96,000.00. At that same time, the younger, Caucasian division administrators had salaries in the upper $50,000s, so they received increases to the lower $70,000s based on the market analysis. The Defendants explain that Qualls-Holston's salary already was considerably higher than the benchmark and higher by a very large margin compared to any of the other division administrators. Thus, Qualls-Holston was not given a raise in 2017 while others did receive a raise (Filing No. 49-5 at 41–43, 116; Filing No. 49-62; Filing No. 49-3 at 5).

The Defendants also argue that Qualls-Holston has failed to point out any specific division administrators who had similar performance issues and were not criticized or who were better treated. Stombaugh regularly evaluated each of the division administrators, and Qualls-Holston was the only division administrator who had the performance issues and a lack of improvement with those issues. The other division administrators received criticism and feedback and applied it so that they improved (Filing No. 49-5 at 20–21, 99–100).

A review of the admissible, designated evidence leads the Court to conclude that Qualls-Holston's race discrimination claim cannot survive summary judgment. The evidence would not "permit a reasonable factfinder to conclude that the plaintiff's race . . . caused the discharge" on February 25, 2019. *Ortiz*, 834 F.3d at 765. Much of Qualls-Holston's argument is based upon her

simple disagreement with the work performance assessments that she received from the Defendants, but this is insufficient to defeat summary judgment. *See Adreani v. First Colonial Bankshares Corp.*, 154 F.3d 389, 398 (7th Cir. 1998) (Plaintiff "attempts to raise issues of material fact based on his own perceptions of his performance. However, it is the perception of the decisionmaker, not the employee, that is relevant."); *Fortier v. Ameritech Mobile Commc'ns, Inc.*, 161 F.3d 1106, 1114 (7th Cir. 1998) ("an employee's self-serving statements about his ability are insufficient to contradict an employer's negative evaluation and do not create a material dispute," and a plaintiff's "subjective self-appraisal also cannot create a genuine issue of fact"). Moreover, Qualls-Holston's argument that other Caucasian employees were not similarly criticized appears to be based on her speculation. Qualls-Holston does not point to any admissible, designated evidence to support her conclusory, speculative opinion. This too cannot defeat summary judgment. *See Sink*, 900 F. Supp. at 1072 ("opposing party cannot meet this burden with conclusory statements or speculation but only with appropriate citations to relevant admissible evidence").

Her reliance on her failure to receive a raise in 2017 is also unavailing. The admissible, designated evidence shows that Qualls-Holston already was paid a much higher salary than the other division administrators in the Department, and those other division administrators received a raise from their then-current salary in the upper $50,000s to the lower $70,000s to bring them closer to the maximum benchmark pay of a division administrator at $82,000.00. Qualls-Holston's salary was approximately $96,000.00, much higher than the maximum benchmark, so she did not receive a raise. The evidence indicates that it was not Qualls-Holston's race that resulted in her lack of a raise in 2017.

The Defendants assert that the February 2018 "just one black spot" note on Human Resource Specialist Radloff's exit interview questionnaire did not refer to Qualls-Holston's race.

But the Court agrees with Qualls-Holston and does not doubt that she considered the note (which she discovered during the pendency of this case) as an offensive and questionable comment regarding her race.  However, this comment alone cannot support the conclusion that Qualls-Holston's termination in February 2019 was based on her race.  The comment was made in the context of Radloff's exit interview in February 2018, wherein she complained that Qualls-Holston was difficult to work with, and it was a year later that Stombaugh and Dr. Machado decided to terminate Qualls-Holston's employment.  The isolated comment from the former employee is too far removed in time and unrelated to the decision to terminate Qualls-Holston's employment, to support Qualls-Holston's discrimination claim.  *See Egonmwan v. Cook Cty. Sheriff's Dep't*, 602 F.3d 845, 850 (7th Cir. 2010) ("stray remarks are generally insufficient to establish discriminatory motivation"); *Mach v. Will Cty. Sheriff*, 580 F.3d 495, 499 (7th Cir. 2009) ("isolated comment or 'stray remark' is typically insufficient to create an inference of discrimination").

Regarding the September 2015 inclusivity activity, the Court agrees with the Defendants that it is too much of a stretch to infer racial animus or discrimination in 2019 from a 2015 training and learning activity where the exercise was meant to address privilege, discrimination, and oppression and to help individuals understand others' experiences.  The activity's purpose was to recognize and address discrimination.  The activity in September 2015 is far too removed in time, and unrelated to the adverse employment action, to support the conclusion that Qualls-Holston's February 2019 termination was based on her race.

The Court determines that the admissible, designated evidence does not support Qualls-Holston's race discrimination claim and, thus, summary judgment is appropriate on this claim.

C.    **Retaliation Claim**

In her Complaint, Qualls-Holston alleges that the Defendants' criticism of her work became more severe after she reported race discrimination, and IU "terminated Plaintiff's employment on February 25, 2019 in retaliation for Plaintiff asserting her legal rights."  (Filing No. 1 at 6.)

To establish a claim for Title VII retaliation, a plaintiff must show that (1) she engaged in statutorily protected activity; (2) she suffered an adverse employment action; and (3) there was a causal connection between the two.  *Burks v. Wis. DOT*, 464 F.3d 744, 758 (7th Cir. 2006). The plaintiff must show that she was retaliated against after engaging in activity protected under Title VII. *Mattson v. Caterpillar, Inc.*, 359 F.3d 885, 889 (7th Cir. 2004). Such protected activity consists of opposing or complaining about discrimination or harassment by the employer based on "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a).

The Defendants assert that Qualls-Holston's work performance issues—many of which predated her internal grievances—caused her termination.  Dr. Machado testified that retaliation against Qualls-Holston played no part in her termination, and Stombaugh testified that no action she took against Qualls-Holston was based on her race or in retaliation for exercising legal rights (Filing No. 49-8 at 49; Filing No. 49-5 at 126). The Defendants argue there is no evidence in the record to even suggest that IU's concerns with Qualls-Holston's work performance were a guise to cover up intentional discrimination or retaliation.

The Defendants further argue,

Qualls-Holston's documented performance issues predated her complaints of alleged discrimination in 2017 and 2018 . . . . In September 2017, Qualls-Holston met with Ginger Arvin, Senior Investigator in the OEO, to file a complaint over not receiving a raise in July 2017. [DE 49-4 at 157:6-9; DE 49-63.] However, because Qualls-Holston informed the OEO that she did not want any action taken, Arvin did not conduct an investigation or inform Stombaugh or Dr. Machado of this meeting. [DE 49-4 at 164:10-13.] Then in September 2018, in response to her Fiscal Year 2017 evaluation, Qualls-Holston emailed Stombaugh alleging that she had

20

received the negative evaluation because of discrimination and in retaliation for her 2017 OEO confidential visit. [DE 49-64.] However, there is no evidence that either Stombaugh or Dr. Machado were aware of Qualls-Holston's OEO visit until after they had completed Qualls-Holston's Fiscal Year 2017 evaluation, because, at the request of Qualls-Holston, the OEO took no action and, as she herself stated, the visit was confidential. [DE 49-3 at 164:10-13; DE 49-64.] Qualls-Holston filed another complaint with the OEO on September 18, 2018, based on what she believed was an unfair 2017 evaluation [DE 49-38], but IU was already proceeding through the progressive discipline process as a result of her continued performance deficiencies and nothing to do with the OEO. Qualls-Holston has no evidence to the contrary.

(Filing No. 51 at 34–35.)

In response, Qualls-Holston asserts that the "Defendants made up lies to criticize Plaintiff's performance." (Filing No. 59 at 8.) She disagrees with the performance assessments that the Defendants gave to her, and she argues that she did not receive performance improvement plans. She asserts that the "Defendants created false criticisms of Plaintiff and used those as a basis to fire her." *Id.*

In particular, Qualls-Holston argues,

Whenever Plaintiff complained about race discrimination, the criticism increased. Plaintiff complained to Dr. Sylk, DoM Vice Chair for Faculty Affairs, Development, and Diversity, sharing with her about Ms. Stombaugh's racial biases, retaliation and mistreatment. Id. at para. 6. Plaintiff complained to the IU OEO and yet no relief was provided. Id. at para 13, and Exhibit 6. Ms. Stombaugh admits that the OEO Office never had her meet with Plaintiff. Defendants Exhibit 49-5, page 96, lines 1-13. From the August 21, 2018 evaluation until the February 25, 2019 termination the IU OEO Office was hands off and did not meet with Ms. Stombaugh or Plaintiff. Id. at page 105, lines 19-24.

The Human Resources officials of the IU School of Medicine were likewise retaliatory. Id at para. 26. When Plaintiff complained to Ray Kliewer, he simply directed Plaintiff's termination instead of providing any relief to Plaintiff. Id. Then once Plaintiff was fired, these Defendants completed the workforce they desired. Plaintiff was replaced by a Caucasian individual with less academic experience. Id. at 18. Defendant's Exhibit 49-5, Stombaugh Depo. Page 10 lines 10-13.

. . .

> After Defendants fired Plaintiff, they continued to harass and retaliate against her. At Ms. Stombaugh's request, Defendant's [sic] Ray Kliewer had Plaintiff listed as not eligible for rehire at all nine (9) IU campuses in the state of Indiana and all ten (10) HR Job sites. (Plaintiff's Affidavit, para. 41), (Exhibit 21) …. Defendants denied approval for Workforce Development benefits for which Plaintiff appealed. (Id.)

([Filing No. 59 at 9](#)–10.)

The Defendants reply that Qualls-Holston's response is replete with allegations and conclusory statements that are not supported by admissible evidence. Defendants argue that Qualls-Holston has asserted numerous conclusory statements about lies and false criticisms without citation to evidence and without personal knowledge, and which contradicts the designated evidence that is admissible. Qualls-Holston does not provide actual evidence of retaliation but rather her own speculation and conclusory assertions and characterizations. The Defendants contend that many of Qualls-Holston's conclusory statements in her affidavit are not based upon personal knowledge and, thus, are not admissible.

The Defendants argue it is clear Qualls-Holston does not have any evidence beyond her own subjective belief that some factor other than her performance issues must have been the reason for her termination, and her own perception of her work performance is not relevant. *See Rand v. CF Indus., Inc.*, 42 F.3d 1139, 1146 (7th Cir. 1994) ("Inferences and opinions must be grounded on more than flights of fancy, speculations, hunches, intuitions, or rumors, and discrimination law would be unmanageable if disgruntled employees could defeat summary judgment by affidavits speculating about the defendant's motives.").

A review of Qualls-Holston's summary judgment response and affidavit reveals that her retaliation claim is built upon a foundation of conclusory assertions, unsupported statements, speculation, and conjecture. Many of her conclusory statements are not based on her personal knowledge. She simply speculates about the allegations that she has made. Although Qualls-

22

Holston disagrees with the Defendants' assessment of her work performance and denies that she was "error-prone," the admissible, designated evidence shows that Qualls-Holston received negative employment performance feedback over a period of several years and that she was terminated because of a long history of work performance issues.   She characterizes the Defendants' assessments of her work performance as "lies" and "false criticisms" without citation to supporting, admissible evidence.   But as noted earlier, IU's concerns about her work performance are well documented.  (*See* Filing No. 49-3, Filing No. 49-5, Filing No. 49-8, Filing No. 49-10, Filing No. 49-12, Filing No. 49-13, Filing No. 49-14, Filing No. 49-15, Filing No. 49-17, Filing No. 49-18, Filing No. 49-19, Filing No. 49-20, Filing No. 49-21, Filing No. 49-22, Filing No. 49-23, Filing No. 49-24, Filing No. 49-25, Filing No. 49-26, Filing No. 49-27, Filing No. 49-28, Filing No. 49-29, Filing No. 49-30, Filing No. 49-32, Filing No. 49-33, Filing No. 49-34, Filing No. 49-35, Filing No. 49-36, Filing No. 49-37, Filing No. 49-38,  Filing No. 49-39).  Unfortunately for Qualls-Holton, the Seventh Circuit instructs that her disagreement with her employer's assessment of her work performance is not relevant. *See Adreani*, 154 F.3d at 398 (plaintiff "attempts to raise issues of material fact based on his own perceptions of his performance. However, it is the perception of the decisionmaker, not the employee, that is relevant.").   The evidence does not support the conclusion that Qualls-Holston's negative work reviews and termination were causally connected to protected activity in which Qualls-Holston engaged.

This also is true of IU's decision to designate Qualls-Holston as ineligible for rehire. Stombaugh ultimately concluded that Qualls-Holston "cannot see the reason for the need for improvement, despite our consistent and ongoing communication to her about them. There is no likelihood that she will ever be able to perform at a minimal level of performance for the senior

position of Division Administrator." (Filing No. 49-47 at p. 3.) The ineligible to rehire designation was based on Qualls-Holston's poor work performance and her unwillingness to improve.

Qualls-Holston's perception that IU School of Medicine "pays lip service"[5] to diversity may be accurate, but, she has failed to show through admissible, designated evidence that there was a causal connection between any statutorily-protected activity in which she engaged and any adverse employment action that she suffered.  Accordingly, her Title VII retaliation claim is appropriately disposed of on summary judgment.

## IV.   CONCLUSION

For the reasons discussed above, the Defendants' Motion for Summary Judgment (Filing No. 46) is **GRANTED**.  Qualls-Holston's claims are dismissed, and final judgment will issue under separate order.

**SO ORDERED.**

Date:  9/3/2021

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Mark R. Waterfill
ATTORNEY AT LAW
mark@waterfilllaw.com

Melissa A. Macchia
TAFT STETTINIUS & HOLLISTER LLP
mmacchia@taftlaw.com

James R. A. Dawson
TAFT STETTINIUS & HOLLISTER LLP
jdawson@taftlaw.com

Michael C. Terrell
TAFT STETTINIUS & HOLLISTER LLP
mterrell@taftlaw.com

Erica Marie Knear
TAFT STETTINIUS & HOLLISTER LLP
eknear@taftlaw.com

[5] Definition of *lip service*: an avowal of advocacy, adherence, or allegiance expressed in words but not backed by deeds. *See* https://www.merriam-webster.com/dictionary/lip%20service.